IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. ALBERTINA DONALDSON, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHAMBERLAIN COLLEGE OF NURSING; )<br>DEVRY EDUCATION GROUP; ADTALEM )<br>GLOBAL EDUCATION INC.; SUSAN KING, )<br>in her individual capacity; and MARY HANNAN, )<br>in her individual capacity, )<br>Defendants ) | Case No. 1:18-cv-02697<br><br>Judge: Honorable Charles Norgle<br>Magistrate: Honorable Daniel G. Martin |

**MEMORANDUM OF PLAINTIFF DR. ALBERTINA DONALDSON
IN OPPOSITION TO DEFENDANT ADTALEM GLOBAL EDUCATION INC.'S
MOTION TO DISMISS COUNT VI OF PLAINTIFF'S COMPLAINT**

Plaintiff Dr. Albertina Donaldson, by her attorneys, Elaine K.B. Siegel & Assoc., P.C., responds as follows to the motion to dismiss and supporting memorandum, of DEFENDANT, ADTALEM GLOBAL EDUCATION INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNT VI OF PLAINTIFF'S COMPLAINT ("Dkt. #14").[1] Count VI alleges tortious interference with prospective economic advantage under Illinois common law.

Its title notwithstanding, the motion is brought by the individual Defendants, Susan King and Mary Hannan, in their individual capacities (collectively, the "Individual Defendants"). Corporate Defendants Chamberlain College of Nursing, DeVry Education Group, and Adtalem Global Education, Inc., operate the Chamberlain College of Nursing, where Plaintiff worked. The Chamberlain College of Nursing is referred to herein as "Chamberlain".

---

[1] Defendants filed two notices of motion, Dkt. Nos. 15 and 16. Although they refer to a "motion," no motion appears in the docket. Instead, Defendants' supporting memorandum appears as Dkt. No. 14.

1

# FACTS

Dr. Albertina Donaldson, Ph.D., the plaintiff in this action, is a fifty-eight year old African-American female. Dkt. #1, ¶¶ 1, 11. Dr. Donaldson was employed at Chamberlain CON ("Chamberlain") from February of 2015 until she was terminated in August of 2017. *Id.*, ¶¶ 12, 13, 34, 39. Dr. Donaldson was initially hired as the Lead Faculty Member for the disorganized Coaching Department. *Id.*, ¶¶ 12,14.

The Chamberlain Clinical Faculty Handbook ("the Handbook") is the reference document that describes the policies of clinical faculty. Dkt. #1, Ex. B., p. 1. The Handbook sets forth the professional standards of clinical faculty, including performance duties and length of appointment. *Id.*, pp. 6-20. The Handbook provides that "Faculty appointments are ongoing and based on performance. Employment remains at will." Dkt. #1, Ex. B., p 5. Dr. Donaldson successfully met the expectations in the Handbook and performed her job satisfactorily. Dkt. #1, ¶ 38(c), 41.

Dr. Donaldson was thrown into her Lead Faculty Member position without any training. *Id.*, ¶¶ 12, 14, 15, 21. Dr. Donaldson initially had two support staff personnel, one a friend of Individual Defendant Susan King. *Id.*, ¶ 15. However, neither staff member was performing adequately, which Dr. Donaldson reported to Dr. King. *Id.* Dr. King terminated the support staff members, but began mistreating Dr. Donaldson as a result. *Id.*, ¶¶ 5, 15, 16, 19. Chamberlain failed to replace the staff, and Dr. Donaldson was left to run the department alone for seven to eight months. *Id.*, ¶ 17. In addition to starving Dr. Donaldson of resources, Dr. King excluded Dr. Donaldson from vital meetings and expected her to do the work of three people. *Id.*, ¶ 20.

Due to the lack of support and mistreatment, Dr. Donaldson transferred to an Associate Professor position at Chamberlain CON, where she taught Transition in Nursing. *Id.*, ¶ 22. Again, Dr. Donaldson did not receive the same training as her non-African-American colleagues. *Id.*, ¶¶

2

22, 25. Again, she was excluded from important meetings. *Id.*, ¶ 25. Dr. Donaldson was not updated on issues expressed by students. *Id.*

Through her role as an Associate Professor, Dr. Donaldson observed that many students were not qualified for the nursing program of Chamberlain, a for-profit institution. *Id.*, ¶¶ 13, 23. She and her colleagues reported that Chamberlain was improperly admitting students who had low test scores and grades, and that these students were not successful in their courses and made complaints on this matter to three deans at Chamberlain. *Id.*, ¶ 23. Dr. Donaldson was retaliated against for expressing her views. *Id.*, ¶ 24.

Despite Dr. Donaldson's success in aiding students through her Associate Professor position, the Individual Defendants maliciously singled out Dr. Donaldson in a discriminatory and retaliatory manner that interfered with her employment at Chamberlain. *Id.*, ¶¶ 26, 27, 111, 114. Defendants issued false and misrepresentative evaluations of Dr. Donaldson's performance that were pretextual and misleading. *Id.*, ¶¶ 26, 27, 28(a), 111, 114. Defendants also claimed that Dr. Donaldson failed to meet expectations when she was performing adequately. *Id..*, ¶ 28(c). Despite the fact that Dr. Donaldson had sixty (60) students at the time, Defendants improperly evaluated Dr. Donaldson's performance based on the comments of four (4) disgruntled students and failed to share the contents of these comments with her. *Id.*, ¶ 28(b), 27, 111, 114. Defendants also penalized Dr. Donaldson for cancelling class in emergency situations and using the University's academic resources, unlike other faculty. *Id.*, ¶ 28(d)-(e). They placed her on a Performance Improvement Plan. *Id.*, ¶ 32, 33. Dr. Donaldson was terminated from her Professor position on August 28, 2017. *Id.*, ¶ 34.

In her Complaint, Dr. Donaldson alleges the following:

- Count I: Defendants Chamberlain, Adtalem, and Devry ("Corporate Defendants")

discriminated against Dr. Donaldson based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000d, et seq. *Id.*, ¶¶ 1-49. Throughout her time at Chamberlain, Dr. Donaldson was treated less favorably than similarly situated non-African-American staff members in that she was not provided the same resources, academic support, or training. *Id.*, ¶ 42(c), (e). She was reprimanded for conduct and was given unfavorable teaching assignments, unlike similarly situated non-African-American staff. *Id.*, ¶ 42(c)-(e). Dr. Donaldson was singled out and penalized for not completing tasks that other professors are not expected to complete. *Id.*, ¶ 42(f), (j). Despite the fact that Dr. Donaldson remained qualified for the position of Associate Professor, she was terminated. *Id.*, ¶¶ 40, 41, 42(j).

- Count II: Corporate Defendants discriminated against Dr. Donaldson based on her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621. Dkt #1, ¶¶ 1-61. Corporate Defendants evaluated Dr. Donaldson disparately, disciplined her more severely, and treated her less favorably than younger, similarly-situated employees. *Id.*, ¶ 53. Corporate Defendants placed Dr. Donaldson on a Performance Improvement Plan ("PIP") without merit, scrutinized her in a manner dissimilar to faculty under the age of 40, and terminated and replaced Dr. Donaldson with a younger faculty member under the age of forty. *Id.*, ¶ 53(e), (f), (j), (k).

- Count III: Corporate Defendants discriminated against Dr. Donaldson based on a disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. Dkt #1, ¶¶ 1-74. Defendants failed to make reasonable accommodations. *Id.*, ¶¶ 64-70.

- Count IV: Corporate Defendants retaliated against Dr. Donaldson for complaining to

4

Human Resources about the racially discriminatory treatment she was facing, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. Dkt #1, ¶¶ 1-90. Corporate Defendants retaliated against her by moving her to a problem-filled facility that failed to comply with standards and regulations and not providing her with any training in her new role. *Id.*, ¶¶ 75, 76.

- Count V: Corporate Defendants retaliated against Dr. Donaldson for complaining to Human Resources about the discriminatory treatment she was facing, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621. Dkt #1, ¶¶ 1 - 107. She was reprimanded for using school resources when it is expected of other teachers and was treated less favorably than similarly-situated individuals who did not engage in protected activity. *Id.*, ¶¶ 91, 96, 101.

- Count VI: Mary Hannan and Dr. Susan King ("Individual Defendants") tortiously interfered with her prospective economic advantage. Dkt #1, ¶¶ 1-119. As an employee meeting her required expectations, Dr. Donaldson had an enforceable expectation of continued employment. *Id.*, ¶ 108. The Individual Defendants acted with actual malice in engaging in conduct completely unrelated to the interests of Chamberlain to effectively preclude Dr. Donaldson from continuing her employment. *Id.*, ¶¶ 110, 114, 115. The Individual Defendants intentionally and willfully issued false and misrepresentative evaluations for Dr. Donaldson, thereby impeding her duties at Chamberlain and subjecting her to undue harassment and discrimination. *Id.*, ¶ 111. (See also Counts I–V, incorporated here by reference).

- Count VII: All Defendants violated her rights under 42 U.S.C. § 1981. Dkt. #1, ¶¶ 1 - 129.

# ARGUMENT

Dr. Donaldson alleges a cognizable claim under Illinois common law for tortious interference with prospective economic advantage. Its elements are as follows:

> Under Illinois law, the elements of a claim for tortious interference with prospective economic advantage or business relationship are: (1) the existence of a valid business relationship or expectancy; (2) the defendants' knowledge of plaintiff's relationship or expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; (4) damages to plaintiff resulting from such interference."

*James v. Intercontinental Hotels Group Resources., Inc.*, No. 09-CV-781, 2010 WL 529444 at *9 (N.D. Ill. Feb. 10, 2010), *citing Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 667 N.E. 2d 1296, 1299 (1996).

Individual Defendants do not dispute the existence, and their knowledge, of a valid business relationship, but dispute whether Dr. Donaldson alleges "a reasonable expectancy of continued employment." Dkt. #14, p. 2. They further argue that neither Individual Defendant acted in her own self-interest, or against the interests of Chamberlain. *Id.* Neither argument will withstand scrutiny.

## A. INDIVIDUAL DEFENDANTS MISTAKE THE PLEADING STANDARDS

Individual Defendants erroneously argue that Dr. Donaldson's complaint is insufficient to meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Dkt. #14, pp. 2-3, 5, *citing* Fed. R. Civ. P. 8(a)(2). In construing a complaint, however, "The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom." *James, supra,* at *6. "A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F. 3d 1047, 1081 (7th Cir. 2008) (citations omitted) (upholding employment

discrimination claims).

Individual Defendants, however, assert that Count VI offers mere "labels and conclusions" that are inadequate to show malicious interference with Dr. Donaldson's employment. Dkt. #14, pp. 2, 5, 6 (emphasis original). Defendants misread the Complaint, and misunderstand the law.

Dr. Donaldson extensively pleads the abusive treatment she received at the hands of Individual Defendants, as they punished her for her sound administrative actions, and sought to drive her from her job. After Dr. Donaldson sought competent staff, Dr. King terminated two staff members, including a friend of hers. Dr. King took it out on Dr. Donaldson, however. Dr. King left Dr. Donaldson to run her department by herself, a three-person job, for 7-8 months. She starved Dr. Donaldson of resources, excluding her from vital meetings, withholding information, and expecting Dr. Donaldson to do the work of 3 people. Dkt. #1, ¶¶ 5, 15, 16, 17, 19, 20, 22, 25. Dr. King denied Dr. Donaldson training provided to others. *Id.*, ¶ 19. In reaction against Dr. Donaldson's questioning of Chamberlain's admissions practices, which accepted unqualified, unsuccessful students to this for-profit school, Individual Defendants continued to lash out her in the preceding ways. *Id.*, ¶ 28. Despite the abusive actions of Individual Defendants, Plaintiff was able to meet her goals, and aid students to successfully complete the program. *Id.*, ¶ 26. They subjected her to false, misrepresentative and pretextual evaluations 26, 27, 28(a), 111, 114. They made false claims of filing to meet expectations. *Id.*, ¶ 28(c). They disciplined her over actions permitted other faculty. *Id.* ¶¶ 42, 53. They imposed a false, pretextual performance improvement plan on Dr. Donaldson, which they canceled before she could even implement it.. Id., ¶¶ 32-33, 81, 98.

Ignoring the detailed allegations of the Complaint, Individual Defendants cite a plethora

7

of legal authority, but misunderstand the law.

First, Individual Defendants rely on the heightened pleading requirements of Illinois law, a fact-pleading jurisdiction adhering to pleading standards requiring a level of specificity well beyond the liberal pleading standards of federal law. In *Frierson v. Univ. of Chicago,* 2015 IL App. (1st) 151176-U, ¶ 15, the Illinois Appellate Court specified a heightened pleading requirement in tortious interference cases. *Id.* In *Quist v. Bd. Of Trustees of Cmty. Coll. Cit. No. 525,* 258 Ill. App. 3d 814, 821, 629 N.E. 2d 807, 812 (3rd Dist. 1994), the court does not even consider the pleading standard. *Quist,* 258 Ill. App. 3d 814, 821; 629 N.E. 2d 821.

Hence, the court in *James, supra,* at *6, distinguishes case law "decided under Illinois's fact pleading rules, while the more liberal federal notice pleading requirements apply in the instant cases." (Citation omitted.)

The heightened pleading standard of Rule 9(b), Fed. R. Civ. P., also does not apply to a claim where, as here, the intent to deceive is not an element. Instead, Federal Rule 8 applies. *See Priority Int'l Animal Concepts, Inc. v. Bryk,* 2012 U.S. Dist. LEXIS 171132 (E.D. Wis., May 31, 2012); *GoHealth, LLC v. Simpson,* 2013 U.S. Dist. LEXIS 167416*, 2013 WL 6183024, *33-36.

Second, Individual Defendants erroneously rely on tortious interference with contract cases, rather than tortious interference with prospective economic advantage. *Robertson v. Lofton,* No. 13 C 3205, 2013 WL 5796780, at *6 (N.D. Ill. Oct. 25, 2013); and *Cashen v. Integrated Portfolio Mgmt., Inc.,* 08-CV-268, 2008 WL 4976210, at *4 (N.D. Ill. Nov. 20, 2008). Nonetheless, Dr. Donaldson meets the pleading standards they illustrate. Considering plaintiff's scant allegations against a corporate insider asserting the privilege to make business decisions, the *Cashen* court found that "tortious interference could be actionable." It granted plaintiff leave to replead, prescribing such allegations as that the actions of the corporate officer "were totally

unrelated or antagonistic" to the corporate interests; or that she "acted solely to harm Plaintiff." *Cashen, supra,* at *8. As discussed *supra*, at *11, Dr. Donaldson amply pleads the details of her mistreatment. She also makes comparable allegations to those at issue in *Cashen*. Dkt. #1, ¶¶ 111, 113, 114, 115.

Third, Individual Defendants fail to recognize that *Dickieson v. DER Travel Serv., Inc.,* 149 F. Supp. 2d 1011, 1017 (N.D. Ill. 2001), supports Dr. Donaldson's position. There, the court upheld a tortious interference claim where, much as here, the individual defendant was "motivated by a desire to punish" plaintiff, warned plaintiff "that he might lose some responsibilities," "[took] control of a department that had been under [plaintiff's] supervision," removed plaintiff from controlling another department, and refused to renew plaintiff's contract. *Id.* at *12. Dr. Donaldson's allegations are far more detailed than those in *Dickieson. Id.* The court remarks that if the individual defendant "acted solely for his own benefit, under Illinois law he may not hide behind the agency relationship." *Id.* at *14.

## B. DR. DONALDSON SUFFICIENTLY ALLEGES "A REASONABLE EXPECTANCY OF CONTINUED EMPLOYMENT"

Dr. Donaldson alleges that her performance was excellent in her administrative and faculty positions at Chamberlain, Individual Defendants' false negative performance evaluations notwithstanding. Dkt. #1., ¶¶ 26, 28, 32, 40, 41, 42, 53, 66, 81, 98, 111. Individual Defendants argue that those poor performance evaluations defeat any claim of a reasonable expectation of continued employment.

Individual Defendants argue that Dr. Donaldson could not reasonably have expected continued employment, because she received poor performance evaluations. Dkt. #14, at 4-5. Individual Defendants cite to *James, supra,* at 6*, in which the court upheld a claim for tortious interference with prospective economic advantage. Plaintiff there alleged that she was wrongfully

9

demoted due to false allegations that she had engaged in misconduct. The court found that the plaintiff adequately pleaded "an expectation not to be demoted", citing her positive work record and performance evaluations. *James, supra,* at 6\*. The *James* court does not say that positive performance evaluations are of the essence. Instead, the issue is simply whether the plaintiff expected *continued* employment, malicious evaluations notwithstanding..

Much as in *James*, in Count VI, Dr. Donaldson alleges, "As an employee meeting her required expectations, Plaintiff had an enforceable expectation of continued employment." Dkt. 1, ¶ 108. Those expectations are set forth in the Chamberlain Clinical Faculty Handbook, attached to the Complaint. Dkt. 1, Ex. B. With respect to "Length of Appointment," the Faculty Handbook provides, "Faculty appointments are ongoing and based on performance. Employment remains at will." *Id.,* p. 5. Plaintiff additionally alleges, "Despite not receiving equivalent training, and exclusion from pertinent meetings, Plaintiff was able to meet her goals, and aid students to successfully complete the program. *Id.,* ¶ 26. She alleges, "Defendants claimed that the Plaintiff did not meet expectations when she indeed did". *Id.,* ¶ 38(c). "Throughout her time at Chamberlain CON ... Plaintiff performed her job satisfactorily, Defendants' contrary allegations notwithstanding. " *Id.,* ¶ 41. "Despite not receiving equivalent training, and despite the lack of physical support, Plaintiff succeeded in her position and provided quality education to her students." *Id.,* p. 15, Count IV, ¶ 77. Following *James,* Dr. Donaldson's allegations suffice to satisfy notice pleading requirements in federal court. *James, supra,* at 6\*.

Similarly, in *DuPage Fork Lift Serv. v. Machinery Distribution,* No. 94 C 7357, 1995 U.S. Dist. LEXIS 32901, 1995 WL 125774 (N.D. Ill. Mar. 14, 1995), the plaintiff alleged, in its count for tortious interference with business expectancy, "that it had a reasonable business expectancy of continuing to do business with its existing customers for a period of time beyond March 1994".

The plaintiff's expectation of ongoing business sufficed. The court held that plaintiff "has satisfied federal rules' liberal notice pleading standard, and has stated a claim for tortious interference of business expectancy." *Id.* at *22. Again, Dr. Donaldson's allegations hit the mark.

Individual Defendants also rely on *Sroga v. Preckwinkle,* No. 14 C -6594, 2017 U.S. Dist. LEXIS 9407; 2017 WL 345549 (N.D. Ill. Jan 24, 2017), a case that likewise supports Dr. Donaldson's position. In *Sroga,* the court upheld the plaintiff's claim for tortious interference, with no discussion of the basis for his reasonable expectancy of continued employment.

Individual Defendants further cite *Goswami v. DePaul University,* No. 14 C 06594, 2014 U.S. Dist. LEXIS 4322, 2014 WL 125600 (N.D. Ill. Jan. 14, 2014).. In that tenure denial case, however, the court held that plaintiff had no expectation of continued employment. Plaintiff untenured professor served for a defined period, subject to a highly discretionary tenure decision. The *Goswani* court distinguished *James, supra,* in that *James* involved **"an at will employment relationship[which] is subsisting and will presumptively continue in effect so long as the parties are satisfied."** *Goswami, supra,* at *23, *quoting James, supra,* at *4 (emphasis added).

Dr. Donaldson pleads, "As an employee meeting her required expectations, Plaintiff had an enforceable expectation of continued employment." Dkt. 1, ¶ 108. This is not simple speculation, but is supported by the express terms of the Faculty Handbook, which specifies as the "Length of Appointment," "Faculty appointments are ongoing and based on performance. Employment remains at will." Dkt. 1, Ex. B., p. 5. She pleads that she met her required expectations, which are spelled out in the Faculty Handbook." *Id.,* pp. 6-15.

Whether Dr. Donaldson indeed met the expectations is a question of fact. At this non-evidentiary stage, Dr. Donaldson's allegations are sufficient.

C. **DR. DONALDSON ALLEGES DEFENDANTS' INTENTIONAL AND UNJUSTIFIED INTERFERENCE WITH HER EXPECTATION OF CONTINUED EMPLOYMENT.**

Here, at a pre-evidentiary phase, Dr. Donaldson has supported her contentions in detail that the Individual Defendants retaliated against her for causing the termination of a crony, and for reporting that Chamberlain was admitting students who were not qualified or prepared to succeed in the Chamberlain R.N. program. Dkt. #1, ¶ 23. Having fired her staff, Individual Defendants failed to replace them, but imposed a disproportionate workload without staff or training. *Id.*, ¶¶ 16, 17, 20. They starved her of departmental resources, excluded her from meetings, and withheld needed information. *Id.*, ¶¶ 18, 20. They gave her false, negative performance evaluations. *Id.* ¶¶ 20.

Dr. Donaldson meets *Tamayo* standards She provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo, supra,* at 1083 (citations omitted). Individual Defendants' motion to dismiss Count VI should be denied.

D. **ON THE ALLEGATIONS OF THE COMPLAINT, INDIVIDUAL DEFENDANTS' TORTIOUS INTERFERENCE WAS NOT PRIVILEGED**

Individual Defendants argue that, even if Dr. Donaldson did establish a reasonable expectation of continued employment, their actions were justified and privileged as employment duties at Chamberlain. Dkt. #14, at 5.

Here, any such privilege is an issue of fact that cannot be resolved on a motion to dismiss. Dr. Donaldson specifically pleads the loss of privilege in that the Individual Defendants acted against the interests of Chamberlain, and thus outside the scope of any qualified privilege. Dr. Donaldson specifically pleads the loss of privilege due to actual malice, evident in Individual Defendants' intentional actions to harm Dr. Donaldson. Dkt. No. 1, ¶¶ 111, 113, 114, 115. Such

malicious acts were independent of and unrelated to their desire to serve Chamberlain. Dr. Donaldson alleges that Individual Defendants acted with malice to interfere with Dr. Donaldson's employment at Chamberlain, acted in their own self-interests and outside the scope of their agency relationship with Chamberlain, and contrary to the interests of Chamberlain. *Id.*, ¶¶ 113, 114, 115.

The Illinois Supreme Court discussed the limitations of the qualified privilege in *Mittleman v. Witous*, 552 N.E.2d 973 (Ill. 1989). In *Mittleman*, the defendant law partner scapegoated the plaintiff associate. The partner had failed to meet a statute of limitations, failed to supervise staff, and failed to have adequate research. *Id.* The court found no qualified privilege sheltering the law partner. He acted, "solely for [his] own gain or solely for the purpose of harming plaintiff since such conduct is not undertaken to further the corporation's interest." *Id.* The defendant's personal stake conflicted with the best interests of the firm when he made statements at a board meeting that led to the associate's dismissal:

> It is certainly not in the best interest of the corporation to receive false information regarding one of its employees, even if that employee is ultimately responsible for a major corporate loss; nor is it in the best interest of the corporation for one who is responsible for such a loss to vindicate himself by unjustly imputing fault to another. *Id.* at 250.

Dr. Donaldson's complaint alleges that Individual Defendants' conduct was not protected by the corporate privilege. Dkt. # 1, ¶¶ 111, 113, 114, 115. Their intent was to harm Plaintiff, not to further Chamberlain's interests. As Chamberlain administrators, Individual Defendants' actions harmed Chamberlain by preparing false negative performance evaluations. By undermining faculty, Individual Defendants also harmed the quality of Chamberlain's education and certification. As set out in *Mittlemen*, Individual Defendants' malicious treatment of Dr. Donaldson was not within the protection of the privilege. *Mittleman*, 552 N.E.2d at 987.

E. **DR. DONALDSON DOES NOT NEED TO SHOW INTERFERENCE BY A THIRD PARTY TO HER EMPLOYMENT RELATIONSHIP**

Individual Defendants incorrectly argue that Dr. Donaldson had to **show** that Ms. King and Ms. Hannan were "third parties to her employment relationship with Chamberlain." Dkt. #14, at 5 (emphasis original). Individual Defendants rely on the truism that "an employer generally cannot interfere with its own business relationship with its employees." *Id.*, citing *Frierson v. Univ. of Chicago*, 2015 IL App (1st) 151176-U, par. 15 (Dec. 2 2015); *Quist v. Bd. Of Trustees of Cmty. College Dist. No. 525*, 258 Ill. App. 3d 814, 821 (3d Dist. 1994).

The third party rule does not apply when the agent of the principal places his or her own interests ahead of the corporate entity's interests. *Ricco v. Southwest Surgery Center, LLC*, 73 F. Supp. 3d 961, 973 (N.D. Ill. 2014)., 73 F. Supp. 3d at 973 ("A corporate officer acting on behalf of a corporation can be held liable for interference with employment expectancy only where he places his own interests ahead of the corporation's interest.")

*Quist* is not to the contrary; the Illinois court did not even consider the self-interest exception to the third-party rule – there, in the different context of a tortious interference with contract claim. *Quist, supra*, at 821. Again, in *Frierson*, plaintiff failed even to name the alleged tortfeasor as a defendant, but sued the University of Chicago itself on a *respondeat superior* theory.

As Defendants acknowledge, "An exception to this general rule exists for circumstances where a corporate officer acts maliciously and outside of the corporation's interest." Dkt. #14 at 5. Dr. Donaldson alleges that Individual Defendants were not acting in good faith, and thus were not acting as corporate agents serving Chamberlain's interests. *Dkt. # 1*, ¶¶ 111, 113, 114, 115. Due to their bad faith and their malicious intent, Individual Defendants were not privileged to interfere with Dr. Donaldson's prospective economic advantage by causing a breach of her contract with Chamberlain, and causing her dismissal from her academic post.

Plaintiff need only plead "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests". *Tamayo, supra,* at 1081. Individual Defendants base their motion on a gross mischaracterization of the allegations in the Complaint. The motion to dismiss should be denied.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Dr. Donaldson respectfully requests that this Honorable Court enter an order denying in its entirety the Individual Defendants' Motion to Dismiss Count VI of her Complaint .In the alternative, to the extent that this Court may find that Plaintiff's claims have not been properly pled, Plaintiff respectfully seeks leave to amend his Complaint. Federal Rule of Civil Procedure 15(a) provides that leave to file an amended pleading "shall be freely given when justice so requires." See also *Cashem, supra,* at *8.

DATED: August 17, 2018

                        Respectfully submitted,

                        By: /s/ Elaine K.B. Siegel
                        One of Plaintiff's Attorneys

OF COUNSEL:

Elaine K.B. Siegel
ELAINE K.B. SIEGEL & ASSOC., P.C.
53 W. Jackson St., Ste. 405
Chicago, IL 60604
(312) 583-9970
Ekbsiegel@aol.com

# CERTIFICATE OF SERVICE

I, Elaine K.B. Siegel, an attorney representing the Plaintiff, hereby certify that I caused the foregoing **Plaintiff's Response to Defendants' Motion to Dismiss Count VI** to be served, via CM/ECF, to the persons named below, on August 17, 2018.

> **AKERMAN LLP**
> Michael C. Marsh
> 98 Southeast Seventh Street, Suite 1100
> Miami, Florida 33131
> michael.marsh@akerman.com
> 305-374-5600
>
> Jamel Greer
> 71 South Wacker Drive, 47th Floor
> Chicago, IL 60606
> jamel.greer@akerman.com
> 312-634-5700
>
> Shayla N. Waldon
> 777 South Flagler Drive
> Suite 1100, West Tower
> West Palm Beach, Florida 33401
> shayla.waldon@akerman.com
> 561-653-5000

/s/ Elaine K.B.Siegel

OF COUNSEL:

Elaine K.B. Siegel
ELAINE K.B. SIEGEL & ASSOC., P.C.
53 W. Jackson St., Ste. 405
Chicago, IL 60604
Tel.:  (312) 583-9970
Fax:  (312) 583-9972 (with notice)
Email: ekbsiegel@aol.com